**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| MICHAEL SCHWARTZ, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>        v.<br><br>LUMICO LIFE INSURANCE COMPANY, INSURED FOR LIFE, LLC, & EDM LEADS, LLC | Civil Action File No. 23-00443<br><br>CLASS ACTION COMPLAINT<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, individually and on behalf of all others similarly situated, alleges as follows:

**NATURE OF ACTION**

1.      This case concerns prerecorded telemarketing calls placed by Defendants Insured For Life, LLC ("IFL") and EDM Leads, LLC ("EDM") on behalf of Defendant Lumico Life Insurance Company ("Lumico") in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. (hereinafter referred to as the "TCPA").

2.       IFL and EDM placed unsolicited calls to Plaintiff Michael Schwartz ("Plaintiff") and thousands of other similarly situated individuals who did not consent to receive them.

3.      These calls promoted Lumico's final expense insurance products using a prerecorded voice.

4.       Plaintiff brings this action on behalf of proposed nationwide class of persons who received the calls.

5.      A class action is the best means of obtaining redress for the Defendants' wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the

TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## JURISDICTION AND VENUE

6.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

7.     Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district, as the Plaintiff received the calls at issue in this district.

## PARTIES

8.     Plaintiff Michael Schwartz is and at all times mentioned herein was, an individual who resides in Ohio.

9.     Lumico is a Missouri corporation with its principal place of business at 175 King Street, Armonk, NY 10504.

10.     IFL is an Arizona limited liability company with its principal place of business in Phoenix, Arizona.

11.     Before changing its name to Insured for Life, LLC, IFL was formerly known as Senior Benefits and Health Services Agency LLC.

12.     EDM is an Arizona limited liability company with its principal place of business in Phoenix, Arizona.

13.     At all times relevant hereto, the principal members of IFL and EDM were Jamal English and Reed Ahlouche.

14.     At all times relevant hereto, IFL and EDM operated out of the same address: 2828 N Central Ave, Suite 1008, Phoenix, Arizona 85004.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. § 227

The TCPA Prohibits Prerecorded Telemarketing Calls

15.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." See 47 U.S.C. § 227(b)(1)(A)(iii).

16.     The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A).  *See* 47 U.S.C. § 227(b)(3).

17.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with the authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

18.     The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used."  *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

19.     In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A]    consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a

condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,*

27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

## FACTUAL ALLEGATIONS

### Facts Relating to Defendant's Generally

20.     Lumico is an insurance company that sells a variety of insurance products, including final expense insurance.

21.     To generate new customers for its final expense insurance products, Lumico engages third party entities to conduct telemarketing on its behalf and trains those entities on how to sell Lumico's final expense products over the phone.

22.     As Lumico states on its public-facing website:  "we work with other reputable companies to sell our products.  Our partners have all been carefully selected and appointed to sell Lumico products to you directly."

23.     Lumico provides an online portal for those third parties to use while on the phone with the called party where they can see Lumico's requirements on questions to ask potential customer over the phone, how to handle responses to those questions, and how to enter the customer's information directly into Lumico's computer system via an online insurance application while on the phone with the called party.

24.     IFL and EDM operate call centers in which they place outbound telemarketing calls to sell insurance products.

25.     Both IFL and EDM identify themselves as "Senior Benefits" and/or "American Benefits" when they place outbound telemarketing calls to sell insurance products.

### Facts Relating to Plaintiff

26.     Plaintiff is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

27.     The Plaintiff's telephone number, (817) 600-XXXX, was registered to a wireless, cellular telephone service at all times relevant hereto.

28.     Plaintiff uses this telephone number for personal and residential purposes.

29.     Plaintiff registered this telephone number on the National Do Not Call Registry on May 24, 2021.

30.     Between December 2021 and the present, IFL and EDM have placed numerous telephone calls to Plaintiff's telephone number using a prerecorded voice to promote the sale of Lumico's final expense insurance products.

31.     For instance, on April 5, 2022, Plaintiff received a call which used a prerecorded voice to convey the following:

> "Hi. This is Kate with Senior Benefits . . . I am calling you about a new low cost final expense insurance that has just been approved in your state. Our program is designed to cover 100% of your burial or cremation expenses. Our licensed agent is here to provide more information on how these affordable plans can benefit you and your family. Would you like more information about new affordable final expense insurance plans?"

32.     During this call, Plaintiff was transferred a Lumico insurance agent after this prerecorded message played.

33.     The agent stated that he was a licensed Lumico insurance agent and that the final expense insurance product being offered was provided by Lumico.

34.     Plaintiff stated that he was on the do not call list and did not want to receive any more calls, and instructed Defendants to stop calling him.

35.     The calls continued.

36.     For instance, on June 13, 2022, Plaintiff received a call which used a prerecorded

- 5 -

voice to convey the following:

> "Hi. This is Kate with Senior Benefits . . . I am calling you about a new low
> cost final expense insurance that has just been approved in your state. Our
> program is designed to cover 100% of your burial or cremation expenses.
> Our licensed agent is here to provide more information on how these
> affordable plans can benefit you and your family. Would you like more
> information about new affordable final expense insurance plans?"

37. During this call and after this prerecorded message played, Plaintiff was

transferred to the same Lumico insurance agent that Plaintiff spoke to during the April 5, 2022

call.

38. The agent again stated that he was a licensed Lumico insurance agent and that the

final expense insurance product being offered was provided by Lumico.

39. Plaintiff again stated that he did not want to receive any more calls, and instructed

Defendants to stop calling him.

40. On October 25, 2022, Plaintiff received another call which used a prerecorded

voice to convey the following:

> "Hi. This is Mary with Senior Benefits . . . I am calling you about a new low cost
> final expense insurance that has just been approved in your state. Our program is
> designed to cover 100% of your burial or cremation expenses. Our licensed agent
> is here to provide more information on how these affordable plans can benefit you
> and your family. Would you like more information about new affordable final
> expense insurance plans?"

41. Plaintiff did not provide prior express written consent to receive these calls.

42. Given the automated and generic telemarketing nature of these calls, Defendants

placed similar unsolicited prerecorded calls to thousands of others individuals who also did not

consent to receive them.

43. These calls harmed Plaintiff and the other call recipients. They were deprived of

legitimate use of their phones because the phone line was tied up, their time was wasted with

- 6 -

unsolicited communications, and their privacy was invaded.

## LUMICO'S LIABILITY FOR IFL AND EDM's CONDUCT

44.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

45.     In their January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

46.     On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers such as Lumico may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

47.     The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the

> nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 FCC Rcd at 6592 (¶ 46).

48. In placing the calls referenced above, IFL and EDM acted as Lumico's agents and with Lumico's actual authority.

49. Lumico carefully selected and appointed IFL and EDM to sell its final expense insurance products over the phone.

50. Lumico trained IFL and EDM on how to sell its final expense insurance products over the phone.

51. Lumico provided IFL and EDM with access to its online portal to use while selling Lumico's final expense insurance products over the phone where they could complete an insurance application for Plaintiff and the other persons they called, and enter their personal information directly into Lumico's computer system.

52. Lumico provided IFL and EDM with instructions on how to use the online portal while selling Lumico's final expense insurance products over the phone, the questions to ask on the phone during that process, and how to respond to the called party's answers.

53. Lumico was aware of and approved of IFL and EDM's use of a prerecorded voice in the calls they placed to market Lumico's final expense insurance products.

54. IFL and EDM also acted with Lumico's apparent authority.

55. Lumico's own statements, including those made directly to the Plaintiff on the

phone after transfer formed the reasonable belief that IFL and EDM were acting on Lumico's behalf when they placed the prerecorded phone calls.

56.     Lumico also ratified IFL and EDM's conduct.

57.     Lumico knew that IFL and EDM were using prerecorded voices in their calls on Lumico's behalf but accepted the telemarketing benefits of those calls any way.

## CLASS ACTION ALLEGATIONS

58.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

59.     Plaintiff brings this action individually and on behalf of all other persons similarly situated (hereinafter referred to as "the Classes") pursuant to Federal Rule of Civil Procedure 23(b)(3).

60.     Plaintiff proposes the following three Class definitions, subject to amendment as appropriate:

### Class One – Prerecorded Telemarketing Call Class

All persons within the United States to whom: (a) IFL, EDM, or any other entity acting on Lumico's behalf (b) made one or more telephone calls (c) to a cellular or residential telephone number (d) using a prerecorded voice (e) to promote Lumico's final expense insurance products (f) since the date that is four years before the filing of this complaint (g) without a signed written agreement expressly referencing Lumico by name and authorizing such calls on Lumico's behalf.

### Class Two - National DNC Class

All persons within the United States to whom (a) IFL, EDM, or any other entity acting on Lumico's behalf (b) made two or more telemarketing calls within any 12-month period (c) to a residential telephone number listed on the national do-not-call registry (d) at least thirty-one days after the telephone number was listed on the national do-not-call registry (e) and since the date that is four years before the filing of this complaint (f) without a signed written agreement with Lumico directly that authorizes such calls on Lumico's behalf.

61.     Excluded from the Classes are Defendants and any entities in which Defendants

has a controlling interest, Defendants' agents and employees, any Judge to whom this action is assigned, and any member of such Judge's staff and immediate family.

62.     The classes defined above are identifiable through Defendants' internal records, phone records, and public databases.

63.     The potential class members number at least in the thousands, given the generic and automated nature of the calls Plaintiff received.

64.     Plaintiff is a member of the proposed Classes.

65.     There are questions of law and fact common to Plaintiff and to the proposed Classes, including but not limited to the following:

- Whether Defendants placed calls using a pre-recorded message;

- Whether Defendants placed two or more calls to telephone numbers listed on the national do-not-call registry during the Class Period;

- Whether Lumico is vicariously liable for telemarketing calls made on its behalf;

- Whether Defendants placed calls without obtaining the recipients' prior express written consent for the call;

- Whether the Plaintiff and the class members are entitled to statutory damages because of Defendants' actions;

- Whether the actions of the Defendants were knowing or willful.

66.     Plaintiff's claims are typical of the claims of members of the Classes. Plaintiff's claims, like the claims of the Classes arise out of the same common course of conduct by Defendants and are based on the same legal and remedial theories.

67.     Plaintiff is an adequate representative of the Classes because his interests do not conflict with the interests of the Classes, he will fairly and adequately protect the interests of the Classes, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

68.      Common questions of law and fact predominate over questions affecting only individual class members. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or its agents.

69.      Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated.

70.      Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities.  There will be no significant difficulty in the management of this case as a class action.

71.      The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

72.      Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## CAUSES OF ACTION

### Count One – Prerecorded Voice Violations

73.      Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

74.      The foregoing acts and omissions of the Defendants constitute numerous and multiple violations of the TCPA concerning calls made through use of a "artificial or prerecorded voice," including but not limited to 47 U.S.C. §§ 227(b)(1)(A)(iii) & (b)(1)(B); 47 C.F.R. §§ 64.1200(a)(2) & 64.1200(a)(3).

75.      Defendants used a prerecorded voice in telemarketing calls without the prior

express written consent of the called party.

76.     Neither Plaintiff nor the class members executed signed written agreements that expressly reference Lumico and authorize calls on Lumico's behalf before receiving the calls at issue.

77.     The Defendants' actions were willful and knowing.

78.     As a result of the Defendants' violations, Plaintiff and Class members are entitled to an award of $500 in statutory damages for each and every violation of the statute, or up to $1,500 in statutory damages for each willfully or knowingly made violation, pursuant to 47 U.S.C. § 227(b)(3).

79.     Plaintiff and members of the class are also entitled to and do seek injunctive relief prohibiting Defendant from making prerecorded telemarketing calls in the future.

## Count Two - Do-Not-Call Registry Violations

80.     Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 through 41 as if fully set forth herein.

81.     Defendants violated the TCPA by making telephone solicitations to residential numbers on the National Do Not Call Registry in violation of 47 U.S.C. § 227(c) and 47 C.F.R. §§ 64.1200(c)(2).

82.     Neither Plaintiff nor the class members executed signed written agreements directly with Lumico that authorized calls on Lumico's behalf before receiving the calls at issue.

83.     The Defendant's violations were willful and knowing.

84.     As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violations of the TCPA, 47 U.S.C. § 227, Plaintiff and

members of the class presumptively are entitled to an award of between $500 and $1,500 in damages for each and every call made.

85.     Plaintiff and members of the class are also entitled to and do seek injunctive relief prohibiting Defendant from making telemarketing calls to numbers on the National Do Not Call Registry in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all Class members the following relief against the Defendants:

A.      Injunctive relief prohibiting Defendants from engaging in the use of pre-recorded messages in their telemarketing calls, and from placing telemarketing calls to numbers on the do-not-call registry;

B.      As a result of Defendants' statutory violations of 47 U.S.C. § 227(b), Plaintiff seeks for himself and each Class member $1500 in statutory damages for each and every violation of the TCPA;

C.      As a result of Defendants' statutory violations of 47 U.S.C. § 227(c), Plaintiff seeks for themselves and each Class member $1500 in statutory damages for each and every violation of the TCPA;

D.      An award of attorneys' fees and costs to counsel for Plaintiff and the Classes as permitted by law;

E.      An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing the Classes as the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

Respectfully submitted,

PLAINTIFF, individually and on behalf of others similarly situated,

By:

/s/ David B. Schultz
David B. Schultz (0077281)
Jeremiah E. Heck (0076742)
Luffman. Heck & Associates, L.L.P.
6253 Riverside Drive, Suite 200
Dublin, Ohio 4301 7
Phone: (614) 224-1500
Fax: (614) 224-2894
JHeck@lawlh.com

/s/ Timothy J. Sostrin
Timothy J. Sostrin (PHV pending)
Keith J. Keogh
Keogh Law, Ltd.
55 W. Monroe St., Ste. 3390
Chicago, IL 60603
Phone: (312)_726-1092
Fax: (312) 726-1093
tsostrin@keoghlaw.com
keith@keoghlaw.com

/s/ Patric A. Lester
Patric A. Lester (PHV pending)
Consumer Attorney Advocates Inc.
5694 Mission Center Road, #358
San Diego, CA 92108
Phone (619) 665-3888
Fax: (619) 320-9444
pl@lesterlaw.com